DIRCKSEN ET AL., APPELLANTS, *v.* GREENE COUNTY
BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Dircksen v. Greene Cty. Bd. of Revision,*
109 Ohio St.3d 470, 2006-Ohio-2990.]

(No. 2005–0625—Submitted February 21, 2006—Decided June 28, 2006.)

O'CONNOR, J.

{¶ 1} Appellants, Daniel and Debra Dircksen, are the owners of a 26.25–acre parcel of land in Sugarcreek Township, Greene County, which contains about five acres of cropland and about 21.25 acres of noncommercial timber. The Dircksens contend that their 26.25–acre parcel should be valued for taxation at its current agricultural-use valuation ("CAUV"). We disagree.

{¶ 2} The Dircksens own three contiguous parcels of land, which until tax year 2003 were valued for taxation on the basis of their CAUV. However, for tax year 2003, the Greene County Auditor revoked the CAUV status of all three parcels. The Dircksens filed an application with the Greene County Auditor for renewal of the CAUV for the properties. The auditor denied their application, stating in her letter to the Dircksens, "The majority of the land in each of these parcels is mostly woods. There is a 6 1/2 acre hayfield on parcel L32–2–18–32 but the remainder is in woods and would not be able to produce sufficient income to qualify for the CAUV program."

{¶ 3} The Dircksens filed a complaint with the Greene County Board of Revision to contest the auditor's denial of CAUV status for their properties. The Greene County Board of Revision denied the Dircksens' complaint, stating, "[F]arming is not the prominent [sic] purpose for these parcels. We believe only four to six acres is all that is being farmed on the acreage on all the above parcels. The Ohio CAUV law states the land must be *predominately* farmed." (Emphasis sic.)

{¶ 4} The Dircksens appealed the decision of the Greene County Board of Revision to the Board of Tax Appeals ("BTA"). The BTA denied CAUV status for the 26.25–acre parcel, stating, "In order for noncommercial timber to qualify for CAUV status, it must be contiguous to or part of a piece of land that otherwise qualifies for CAUV on its own merit, by being 'devoted exclusively to agricultural use.' In the instant matter, only 5 acres of the total 26.25–acre

parcel, or less than one-fourth of the acreage, is devoted to agricultural use, hardly an 'exclusive' or 'primary' use of the parcel."

{¶ 5} Although the Dircksens appealed the CAUV status of all three of their parcels to the BTA, their appeal to this court involves only the 26.25–acre parcel (parcel No. L32–0002–0018–0–0032–00), which consists of five acres of cropland—which was rented for about $300 per year—and 21.25 acres of noncommercial timber.

{¶ 6} This cause is now before the court upon an appeal as of right.

{¶ 7} In 1973, an amendment to Section 36, Article II of the Ohio Constitution was approved by the voters, which authorized the General Assembly to make an exception to the constitutional requirement that all land and improvements be taxed by uniform rule according to value. The amendment provided, "Notwithstanding the provisions of Section 2 of Article XII, laws may be passed to provide that land devoted exclusively to agricultural use be valued for real property tax purposes at the current value such land has for such agricultural use." Am. H.J.R. No. 13, 135 Ohio Laws, Part I, 2043. The amendment was implemented by the enactment of R.C. 5713.30 through 5713.37. Am.Sub.S.B. No. 423, 135 Ohio Laws, Part II, 341, 344.

{¶ 8} R.C. 5713.31 provides:

{¶ 9} "If the auditor determines * * * that the land is *land devoted exclusively to agricultural use* he shall appraise it for real property tax purposes in accordance with rules adopted by the commissioner for the valuation of land devoted exclusively to agricultural use and such appraised value shall be the value used by the auditor in determining the taxable value of such land for the current tax year * * *." (Emphasis added.)

{¶ 10} The phrase "land devoted exclusively to agricultural use" is defined in R.C. 5713.30(A), which is divided into two categories based on acreage. R.C. 5713.30(A)(1) defines the phrase to mean "[t]racts, lots, or parcels of land totaling not less than ten acres" used in a certain way, while R.C. 5713.30(A)(2) defines the same phrase for "[t]racts, lots, or parcels of land totaling less than ten acres" used in certain ways.

{¶ 11} Because the Dircksens' parcel is larger than ten acres and does not meet the income requirements of R.C. 5713.30(A)(2), the relevant provision for determining whether the parcel qualifies for CAUV status is R.C. 5713.30(A)(1), which provides:

{¶ 12} "(A) 'Land devoted exclusively to agricultural use' means:

{¶ 13} "(1) Tracts, lots, or parcels of land totaling not less than ten acres that * * * were devoted exclusively to * * * the production for a commercial purpose of * * * field crops * * * or the growth of timber for a noncommercial purpose,

if the land on which the timber is grown is contiguous to or part of a parcel of land under common ownership that is otherwise devoted exclusively to agricultural use * * *."

{¶ 14} It is uncontested that the 21.25–acre noncommercial timber area is contiguous to and part of the same parcel that contains the five acres used to grow field crops. The Dircksens interpret R.C. 5713.30(A)(1) to mean that if any portion of their parcel, no matter how small, is devoted exclusively to the production of field crops for a commercial purpose and the remaining portion of the parcel is devoted to the growth of timber for a noncommercial purpose, the entire parcel is eligible for CAUV status.

{¶ 15} On the other hand, the county auditor contends that under R.C. 5713.30(A)(1), before any land containing timber grown for a noncommercial purpose can be considered for CAUV status, the noncommercial timber area must be contiguous to or part of a parcel of land, under common ownership, that qualifies for CAUV status independently of the noncommercial timber area.

{¶ 16} This case requires us to construe R.C. 5713.30(A)(1). The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471. In paragraph two of the syllabus of *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, the court held:

{¶ 17} "[T]he intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation."

{¶ 18} We believe that the language of R.C. 5713.30(A)(1) is plain and unambiguous. The language of that statute plainly requires that in order for noncommercial timber land to be considered for CAUV status, the noncommercial timber land must be contiguous to or part of a parcel of land "that is otherwise devoted exclusively to agricultural use." In order for the contiguous land or other land in the same parcel to be devoted exclusively to agricultural use, that land must qualify on its own, independently of the noncommercial timber, for CAUV status under R.C. 5713.30(A)(1) before the noncommercial timber land can qualify for CAUV status.

{¶ 19} In this case, since the five acres of cropland that are contiguous to the noncommercial timber do not meet the requirement of R.C. 5713.30(A)(1) that they be "not less than ten acres," the acreage cannot be considered land devoted exclusively to agriculture and is therefore ineligible for CAUV status.

{¶ 20} A review of the statutory history that has resulted in the current R.C. 5713.30(A)(1) confirms our reading of this statute. As initially enacted in 1974,

both R.C. 5713.30(A)(1) and 5713.30(A)(2) included timber among the crops that, when produced for commercial purposes, could qualify land as "land devoted exclusively to agricultural use." Am.Sub.S.B. No. 423, 135 Ohio Laws, Part II, 341, 344. Effective in March 1993, R.C. 5713.30(A)(1), but not (A)(2), was amended to remove timber from the list of crops that, when produced commercially, qualified land as land devoted exclusively to agricultural use. In place of the requirement for the commercial production of timber, the amendment added language that qualified timber "whether or not it is produced for a commercial purpose." Sub.H.B. No. 95, 144 Ohio Laws, Part II, 2994, 3001. Thus, under the 1993 amendment to R.C. 5713.30(A)(1), rather than having to be land containing timber that was being produced for a commercial purpose, land that contained timber whether or not it was being produced for a commercial purpose qualified as "land devoted exclusively to agricultural use." However, even after the 1993 amendment, R.C. 5713.30(A)(2) (less than ten acres) still required that timber be produced for commercial purposes to be eligible for CAUV status.

{¶ 21} Later in 1993, R.C. 5713.30(A)(1) was amended a second time to add the language that is now in question. Am.Sub.H.B. No. 281, 145 Ohio Laws, Part III, 5278, 5281. The second amendment removed from the list of crops qualifying for CAUV status "timber, whether or not it is produced for a commercial purpose," and went back to requiring timber to be produced for a commercial purpose to qualify land for CAUV status. However, the concept of noncommercial timber being eligible for CAUV status was retained with the new restriction that the noncommercial timber land must be contiguous to or part of a parcel of land under common ownership "that is *otherwise* devoted exclusively to agricultural use." (Emphasis added.)

{¶ 22} The preceding review shows that initially noncommercial timber did not qualify for CAUV status under R.C. 5713.30(A)(1). However, the General Assembly later amended R.C. 5713.30(A)(1) to permit noncommercial timber to qualify on its own as a use for which CAUV status could be granted. But fewer than four months after that change became effective, the General Assembly withdrew its unrestricted approval for noncommercial timber to qualify for CAUV status and amended R.C. 5713.30(A)(1) to permit noncommercial timber to be included for CAUV status only if it was contiguous to or part of a parcel that "otherwise" qualified for CAUV consideration. As the five acres of cropland do not otherwise qualify for CAUV consideration, the remaining acres of noncommercial timber likewise do not qualify for CAUV status.

{¶ 23} Because the Dircksens' 26.25–acre parcel does not qualify for CAUV status under R.C. 5713.30(A)(1), we hold that the decision of the BTA was reasonable and lawful and affirm it.

Decision affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

**PFEIFER, J., dissenting.**

{¶ 24} The logic of the majority opinion is circular and, therefore, profoundly flawed. There is an old rule, although not written in stone or any legal text, that no form of a word can be used to define that word. For example, to define "statutory interpretation" as "the process of interpreting a statute" is to accomplish nothing. Nevertheless, the majority opinion interprets "land devoted exclusively to agricultural use" to include land on which timber is grown for a noncommercial use if the land is otherwise "devoted exclusively to agricultural use." The definition is circular and therefore meaningless. "Land devoted exclusively to agricultural use" as used in R.C. 5713.30(A) is a term of art. Using a term of art to define the same term of art doesn't make sense.

{¶ 25} Assigning the plain and ordinary meaning to the term "devoted exclusively to agricultural use" as used in R.C. 5713.30(A)(1) does make sense. As the majority writes, "the 21.25–acre noncommercial timber area is contiguous to and part of the same parcel that contains the five acres used to grow field crops." The five-acre portion of the land is, pursuant to the plain and ordinary meaning of the term, "devoted exclusively to agricultural use"—even the majority acknowledges that. The entire parcel is, therefore, land "devoted exclusively to * * * the growth of timber for a noncommercial purpose * * * contiguous to or part of a parcel of land under common ownership that is otherwise devoted exclusively to agricultural use." Accordingly, the 26.25–acre parcel should be valued for taxation at its current agricultural-use valuation.

{¶ 26} The majority's interpretation of R.C. 5713.30(A)(1) also defies the intent of the legislature. According to its plain language, R.C. 5713.30(A)(1) applies to any parcel of "land totaling not less than ten acres," irrespective of what portion of the land is devoted to field crops or growth of timber. The majority interpretation transforms the statute so that it would apply only when the portion of the land devoted to field crops is not less than ten acres. That interpretation is not what the General Assembly intended or enacted. I dissent.

---

Coolidge, Wall, Womsley & Lombard and Lance A. Gildner, for appellants.

Rich, Crites & Dittmer and James R. Gorry, for appellees.